UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
Abigail Rose,

              *Plaintiff,*

     *v.*

Urban Arts Partnership,

              *Defendant.*
----------------------------------------------------------------X

**COMPLAINT**

**1:22-cv-7792**

**JURY REQUESTED**

     Plaintiff Abigail Rose by her counsel, The Harman Firm, LLP, alleges for her Complaint against Defendant Urban Arts Partnership ("Defendant" or "UAP") as follows:

## PRELIMINARY STATEMENT

     1.     This case is about unpaid overtime in violation of the Fair Labor Standards Act (FLSA) and the New York Labor Law (NYLL).

     2.     This case also involves claims of disability discrimination in violation of the New York State Human Rights Law (NYSHR) and the New York City Human Rights Law (NYCHR) for disability discrimination.

## JURISDICTION

     3.     Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiff's claims, as they arise under the FLSA, 29 U.S.C. 8.

     4.     Pursuant to 28 U.S.C. § 1367, this Court has original jurisdiction over Plaintiff's State and City claims because they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy (i.e. Plaintiff's employment with Defendant).

**PARTIES**

5. Plaintiff was and is a resident of New York, NY.

6. Defendant Urban Arts Partnership was and is incorporated in the State of New York with a principal place of business at 39 W 19th St, 5th floor, New York, NY 10011.

**JURY DEMAND**

7. Plaintiff respectfully requests a trial by jury.

**STATEMENT OF FACTS**

8. Plaintiff was offered a job on May 5, 2021 as a Manager of Personal Philanthropy ("MPP").

DISABILITY FACTS

9. Plaintiff has a long history of Asthma and related disabilities.

10. In fact, Plaintiff interviewed with UAP while in the hospital as a result of Asthma complications.

11. At no point during her employment would UAP offer any dialogue as to providing a reasonable accommodation for Rose's Asthma despite being put on notice and Plaintiff asking for accommodations.

12. Defendant did not, however, have any human resources department or function.

13. Plaintiff was only able to tell her immediate supervisors about her disabilities when requesting accommodations.

14. Plaintiff also seriously injured her back on a backpacking trip in September 2021 and was treated for severe muscle sprains and possible herniated disk.

15. Plaintiff told the CEO Philip Courtney about the back pain in December 2021.

16. Courtney did not offer any dialogue on the issue.

17. Plaintiff's back would be reinjured in January 2022, and UAP still offered no dialogue as to any need for a reasonable accommodation despite being on notice and Plaintiff asking for accommodations.

18. Again, because there was no human resources department and Courtney did not engage in the interactive process about Plaintiff's reasonable accommodations, Plaintiff continued to work unaccommodated despite her injury.

19. From February to May 2022, Plaintiff received physical therapy for her back injury.

20. Specifically, Plaintiff often must change from either sitting or standing because doing either for long periods of time can cause serious pain.

21. Plaintiff also goes through periods of excruciating pain and would request accommodations.

22. UAP never offered substantive accommodations or engaged the interactive process despite several managers, including Courtney and King, being aware of the disability, and Plaintiff was still expected to work at least two (2) days in the office per week.

OVERTIME FACTS

23. Plaintiff had an employment contract with Defendant that allowed her eighteen (18) paid vacation days and five (5) paid sick days per year.

24. Plaintiff's working hours from May 5, 2021, to October 12, 2022 ranged from 45 to 50 hours a week.

25. Plaintiff anticipated working only from roughly 10am until 6pm, but her work schedule exceeded that range constantly.

26. Plaintiff was often asked by her supervisor Genevieve King to work well before 10am and well after 6pm.

27. King would request that Plaintiff work after 6:00pm researching donors and donor

prospects, a role that King was also expected to perform but which she did not want to do.

28. At other times, often as much as four days a week, King would ask Plaintiff to log into multiple different donation management platforms to track and monitor donations, and, as well, perform more research on donor prospects.

29. King, who was capable of logging onto QGIV monitoring system, but did not want to, would request this very late at night and Plaintiff would have to spend considerable amounts of time logging in and reporting her findings.

30. King would also request Plaintiff make changes and updates to donation monitoring software, such as Mailchimp, outside of normal working hours.

31. Plaintiff would receive texts from King and Courtney very early in the morning and very late at night.

32. These texts were not passive, and King and Courtney both expected and demanded immediate responses, even well beyond 7:00pm.

33. Furthermore, the texts were substantive, not mere check ins or updates, and demanded Plaintiff return substantive work in response.

34. Courtney would, during King's emergency leave detailed below, request Plaintiff join meetings as early as 8am and stay well after 5pm.

35. Plaintiff's role was working in Major Gifts – working with donors and her supervisors to secure significant financing and donations.

36. Plaintiff had no authority to make independent decisions for Defendant's business, as she merely provided support for Defendant's fundraising efforts.

37. In October 2021, King unexpectedly began a three-month emergency medical leave due to mental health issues and pregnancy.

38. Immediately following that, and due to personnel changes at UAP, Plaintiff's

weekly work hours increased significantly to 45-55 hours per week.

39. Plaintiff also took on a number of additional administrative roles which were well beyond the scope of her contracted employment.

40. Plaintiff helped launch a winter season fundraising campaign known as "Year-End-Appeal" which raised $130,000, just short of the $160,000 goal.

41. While intensely committed to supporting the fundraising campaign, Plaintiff also had to take on Ms. Kings' tasks while performing Plaintiff's required duties.

42. In January 2022, Ms. King returned to work at UAP.

43. During Plaintiff's and Ms. King's first meeting after Ms. King had returned from medical leave, Ms. King was disappointed that the fundraising goal of $160,000 was not met.

44. During this meeting, Plaintiff informed Ms. King that Plaintiff felt overwhelmed, unsupported, and abandoned by her executive and team.

45. Ms. King dismissed Plaintiff as feeling "burned out," but agreed that there should be a support staff for Plaintiff and her position.

46. From January 2022 through April 2022, UAP held its Color Ball campaign, Campaign duties included hosting several in-person and virtual events, travel to meet with donors, multiple shopping trips to purchase necessary supplies for events, and attending multiple early-morning and late-evening board member and team meetings.

47. Plaintiff was working between 50-60 hours during this period.

48. Still, during this time, Plaintiff's injured back continued to be a source of significant pain, and she would, from time to time, need a break from work to recover and ease the pain.

49. Ms. King praised Plaintiff for her central role in support of the success of the Color Ball campaign.

50. Specifically, Ms. King commended Plaintiff for her improvements and successes

5

in revamping board engagement, bringing in new corporate partners, and directly assisting the Director of Communications and Marketing during the campaign.

51. Courtney, however, would not, and would only disparage Plaintiff.

52. Genevieve King had been made aware and acknowledged that CEO, Philip Courtney, could often be difficult and demeaning, specifically calling him "nasty" on the day of the Color Ball gala.

53. During the Color Ball campaign, Plaintiff was given more responsibilities, including tracking charity streaming progress.

54. Ultimately, the Color Ball campaign raised around $740,000 and exceeded the goal of $600,000.

55. In April 2022, Plaintiff was approved to work for three weeks in May remotely from Arkansas.

56. Genevieve King was made aware that this trip was related to personal issues with family and necessary because of Plaintiff's disabilities.

57. Defendant was aware Plaintiff was struggling with physical and mental health issues.

58. Plaintiff had requested time off one month prior via email, but did not receive a response from Genevieve King until one week before departure.

59. Plaintiff began planning for the Summer fundraising campaigns in February 2022 with plans to launch the campaign while working remotely.

60. Ms. King specifically told Plaintiff that if the summer campaign monetary goals were met, Plaintiff would have exceeded her fundraising expectations for the fiscal year.

TERMINATION

61. On April 23, 2022, Plaintiff successfully hosted a Family Day event.

62. Yet, on April 28, 2022 Plaintiff was terminated from her position and was told by Ms. King that Plaintiff's position was being dissolved.

63. On the same day, Plaintiff's position, with a different title, was posted on Linkedin, and management told the rest of the employees at Urban Arts that Plaintiff had left "due to corporate restructuring."

64. Urban Arts then offered Plaintiff a termination agreement of one month's pay that did not include any overtime worked, payment for all Paid Time Off (PTO) accumulated, or any performance bonus.

65. By the day before her termination, Plaintiff had accumulated 164 hours of PTO.

66. The day after her termination, however, the number of PTO hours was cut down to 17.8.

67. Up until then, Plaintiff has only taken two personal days and one sick during the accrual period, and certainly could not have used 146.2 hours of PTO in two days.

68. Throughout her employment, Plaintiff was open and forthcoming with King about an injury Plaintiff suffered to her back.

69. King was dismissive about the issue and would not accept any limitations as stemming from Rose's bona fide disabilities.

70. Rose's Asthma and back injury are both debilitating and impair major life functions, such as engaging in many recreational activities, impair her ability to stand or sit for long periods of time, and have prevented her from being able to work on a number of occasions.

71. Further, Plaintiff was treated for increased symptoms related to Major Depressive Disorder, Generalized Anxiety Disorder, and Unspecified Panic Disorder. Plaintiff was prescribed medication in early 2022 to help ease these disabilities. Plaintiff was also prescribed an increase amount for existing medications.

72. Plaintiff's employment contract stated that Plaintiff would be entitled to a performance bonus, that, per Genevieve King's review, is typically received at one-year review. Plaintiff was terminated two weeks before said review would have happened.

## CAUSES OF ACTION

### FIRST CLAIM

**Failure to Pay Overtime in Violation of the FLSA**

73. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 72 with the same force as though separately alleged herein.

74. Plaintiff was employed primarily as a Manager of Personal Philanthropy.

75. The Fair Labor Standards Act (FLSA) establishes minimum wage, overtime pay, recordkeeping, and child labor standards affecting full-time and part-time workers in the private sector and in Federal, State, and local governments.

76. At all times relevant to this action, Plaintiff was employed by Defendant within the meaning of the FLSA.

77. The FLSA mandates that employers must compensate employees at one-and-a-half times their normal hourly rate for all hours worked over 40 each week unless salary exempt.

78. From May 2021 through October 2021, Plaintiff worked between 45 and 50 hours per week.

79. From October 2021 through January 2022, Plaintiff worked between 45 and 55 hours per week.

80. From January 2022 through April 2022, Plaintiff worked between 50 and 60 hours per week.

81. Plaintiff was improperly designated as salary exempt.

82. Plaintiff's job responsibilities did not fit into any salary exempt categories from the FLSA overtime requirement.

83. Defendant willfully violated the FLSA's overtime requirement by not paying Plaintiff at the overtime premium rate for hours worked in excess of 40 hours in a work week.

84. Due to Defendant's FLSA violations, Plaintiff is entitled to recover from Defendant the unpaid compensation, liquidated damages, interest and reasonable attorneys' fees, costs, and interest related to the action.

## SECOND CLAIM

### Unpaid Overtime in Violation of the NYLL

85. Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 72 with the same force as though separately alleged herein.

86. Under New York Labor Law §662, employees are entitled to one and one-half their rate of pay for any and all time spent working more than forty (40) hours in one-week.

87. The NYLL mandates that employers must compensate employees at one-and-a-half times their normal hourly rate for all hours worked over 40 each week unless salary exempt.

88. From May 2021 through October 2021, Plaintiff worked between 45 and 50 hours per week.

89. From October 2021 through January 2022, Plaintiff worked between 45 and 55 hours per week.

90. From January 2022 through April 2022, Plaintiff worked between 50 and 60 hours per week.

91. Plaintiff was improperly designated as salary exempt.

92. Plaintiff's job responsibilities did not fit into any salary exempt categories from the NYLL overtime requirement.

93. Defendant willfully and intentionally violated the NYLL's overtime

requirement by not paying Plaintiff at the overtime premium rates for hours worked in excess of 40 hours in a work week.

94. Defendant willfully violated the NYLL's overtime requirement by not paying Plaintiff at the overtime premium rate for hours worked in excess of 40 hours in a work week.

95. Due to Defendant's NYLL violations, Plaintiff is entitled to recover from Defendant the unpaid compensation, liquidated damages, interest and reasonable attorneys' fees, costs, and interest related to the action.

### THIRD CLAIM

#### Breach of Contract for Failure to Pay Paid Time Off

96. Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 72 with the same force as though separately alleged herein.

97. Plaintiff accrued 164 hours of Paid Time Off.

98. Defendant was contractually obligated to pay Plaintiff her Paid Time Off.

99. Rather than pay Plaintiff her Paid Time Off, Defendant terminated Plaintiff and never gave her the money she was entitled to.

100. As such, Defendant breached its contracted with Plaintiff, and Plaintiff is entitled to recover that amount, any liquidated damages, and any costs, fees, and expenses related to this action.

### FOURTH CLAIM

#### Failure to Engage in the Interactive Process in Violation of the NYSHRL

101. Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 72 with the same force as though separately alleged herein.

102. The New York State Human Rights Law makes it illegal for an employer to fail to engage the interactive process.

103. When an employee discloses that they have a disability, the employer is obligated to engage in the interactive process and determine what, if any, reasonable accommodations the employee needs.

104. Here, Plaintiff disclosed her disabilities of both her severe back injury and her Asthma.

105. In fact, Plaintiff interviewed with Defendant from the hospital while suffering from issues stemming from her Asthma.

106. Defendant failed to engage the interactive process about Plaintiff's disabilities.

107. The Defendant discriminated against Plaintiff, a well-qualified individual, both by ignoring her requests for reasonable accommodations and failing to accommodate her.

108. Defendant violated Plaintiff's rights under the New York State Human Rights Law, and is liable for past and future damages, lost wages, and compensatory damages for emotional suffering.

109. Defendant intentionally violated Plaintiff's rights under the New York State Human Rights Law, with malice or reckless indifference, and, as a result, is liable for punitive damages.

## FIFTH CLAIM

**Failure to Engage in Cooperative Discussions in Violation of the NYCHRL**

110. Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 72 with the same force as though separately alleged herein.

111. The Defendant violated New York City Human Rights Law by not engaging in the good faith cooperative discussion to provide reasonable accommodations for Plaintiff.

112. The New York City Human Rights Law requires employers to engage in cooperative discussions with employees with known disabilities.

113. Plaintiff worked for months despite Defendant systematically ignoring Plaintiff's internal requests for accommodations due to her disability and Plaintiff was terminated because of that disability.

114. The Defendant discriminated against Plaintiff, a well-qualified individual, by not engaging the interactive process.

115. Defendant violated Plaintiff's rights under New York City Human Rights Law, and is liable for past and future damages, lost wages, and compensatory damages for emotional suffering.

116. Defendant intentionally violated Plaintiff's rights under New York City Human Rights Law, with malice or reckless indifference, and, as a result, is liable for punitive damages.

## SIXTH CLAIM

**Wrongful Termination based on Disability Discrimination in Violation of the NYSHRL and NYCHRL**

117. Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 72 with the same force as though separately alleged herein.

118. The New York State Human Rights Law and the New York City Human Rights Law both prevent discrimination and adverse employment actions based on disability status.

119. Plaintiff was disabled within the meaning of each statute, she had her major life functions impaired by her anxiety, depression, Asthma, and back injury.

120. Defendant was aware of all of these disabilities.

121. Defendant abruptly terminated Plaintiff after she continued to express limitations and ailments as a result of her disabilities.

122. Defendant's reason for termination is pretextual as Plaintiff's job was never cut, Defendant simply wanted to replace her with a non-disabled person.

123. Defendant discriminated against Plaintiff, a well-qualified individual, by terminating her because of her disability.

124. Defendant violated Plaintiff's rights under the New York State Human Rights Law and the New York City Human Rights Law, and is liable for past and future damages, lost wages, and compensatory damages for emotional suffering.

125. Defendant intentionally violated Plaintiff's rights under the New York State Human Rights Law and the New York City Human Rights Law, with malice or reckless indifference, and, as a result, is liable for punitive damages.

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs, and disbursements;

B. For the second cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs, and disbursements;

C. For the third cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs, and disbursements;

D. For the fourth cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs, and disbursements;

E. For the fifth cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs, and disbursements;

F. For the sixth cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs, and disbursements;

G. For such other and further relief as the Court deems just and proper.

Dated: New York, NY
September 12, 2022

                                                    **THE HARMAN FIRM, LLP**

By: _____
                        Walker G. Harman, Jr.
                        1270 Sixth Ave.
                        Suite 756
                        New York, NY 10020
                        (646) 248-2288
                        wharman@theharmanfirm.com
                        *Attorney for Plaintiff*